# EXHIBIT A
to

NOTICE OF REMOVAL

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
MICROSOFT CORPORATION and DOES 1-10

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
HEALTHCARE ALLY MANAGEMENT OF CALIFORNIA, LLC

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

DEC 07 2017

Sherri R. Carter, Executive Officer/Clerk
By: Stacey Watson, Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Santa Monica Courthouse
1725 Main St.
Santa Monica, CA 90401

CASE NUMBER:
*(Número del Caso):* SC128482

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Jonathan Stieglitz, 11845 W. Olympic Blvd., Suite 800, Los Angeles, California 90064, (323) 979-2063

DATE: December 6, 2017                Clerk, by                                    , Deputy
*(Fecha)* 07 December 2017 Sherri R. Carter, Clerk  *(Secretario)* **STACEY WATSON**   *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
   Microsoft Corporation
3. ☒ on behalf of *(specify):*
   under: ☒ CCP 416.10 (corporation)            ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☒ by personal delivery on *(date):* 12/22/17

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

21:58:30 2017-12-06

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

Jonathan A. Stieglitz, Esq. (SBN 278028)
THE LAW OFFICE OF JONATHAN A. STIEGLITZ
11845 Olympic Blvd., Suite 800
Los Angeles, CA 90064
Telephone:   (323) 979-2063
Facsimile:   (323) 488-6748

Attorney for Plaintiff
Healthcare Ally Management of California, LLC

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

DEC 07 2017

Sherri R. Carter, Executive Officer/Clerk

By: Stacey Watson, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| HEALTHCARE ALLY MANAGEMENT OF CALIFORNIA, LLC<br><br>Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION and DOES 1-10<br><br>Defendant. | Case No.:  SC128482<br><br>Complaint for:<br><br>1. BREACH OF ORAL CONTRACT;<br>2. PROMISSORY ESTOPPEL; and<br>3. *QUANTUM MERUIT*<br><br>**(Jury Trial Requested)** |

Plaintiff HEALTHCARE ALLY MANAGEMENT OF CALIFORNIA, LLC (hereinafter referred to as "HAMOC") complains and alleges:

**STANDING**

1.      On June 17, 2015, La Peer Surgery Center (hereinafter referred to as the "Medical Provider") assigned all rights, including the right to file suit, relating to the unpaid bills of Patient,[1] a member and enrollee of Microsoft Corporation (hereinafter referred to as "DEFENDANT"), to HAMOC.

---

[1] For privacy reasons and in order to comply with Health Insurance Portability and Accountability Act ("HIPAA"), the full name, dates of treatment and policy information pertaining to the Patient is being withheld. This information will be disclosed to defendants upon their request.

- 1 -

Complaint

## GENERAL ALLEGATIONS

2. Plaintiff, HAMOC, is and at all relevant times was a limited liability company, organized and existing under the laws of the State of California. HAMOC is and at all relevant times was in good standing under the laws of the State of California.

3. DEFENDANT is and was licensed to do business in and is and was doing business in the State of California, as insurers. PLAINTIFF is informed and believes that DEFENDANT is licensed by the Department of Managed Health Care and/or the Department of Insurance to transact the business of insurance in the State of California. DEFENDANT is, in fact, transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

4. The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1 through 10, inclusive, are unknown to PLAINTIFF, who therefore sues said defendants by such fictitious names. PLAINTIFF is informed and believes and thereon alleges that each of the defendants designated herein as a DOE is legally responsible in some manner for the events and happenings referred to herein and legally caused injury and damages proximately thereby to PLAINTIFF. PLAINTIFF will seek leave of this Court to amend this Complaint to insert their true names and capacities in place and instead of the fictitious names when they become known to it.

5. At all times herein mentioned, unless otherwise indicated, DEFENDANT/s were the agents and/or employees of each of the remaining defendants, and were at all times acting within the purpose and scope of said agency and employment, and each defendant has ratified and approved the acts of his agent. At all times herein mentioned, DEFENDANT/s had actual or ostensible authority to act on each other's behalf in certifying or authorizing the provision of services; processing and administering the claims and appeals; pricing the claims; approving or denying the claims; directing each other as to whether and/or how to pay claims; issuing remittance advices and explanations of benefits statements; making payments to Medical Provider and its patients.

## GENERAL FACTS

6. All of the claims asserted in this complaint are based upon the individual and proper rights of HAMOC in its own individual capacity and are not derivative of the contractual or other rights of the Medical Provider's patients. All of the claims asserted in this complaint arise out of the Medical Provider's interactions with DEFENDANT and DOES 1 through 10, inclusive and are derived from the representations and warranties made during those conversations amongst those parties. HAMOC does not in any way, seek to enforce the contractual rights of the Medical Provider's patients, through the patients' insurance contract, policies, certificates of coverage or other written insurance agreements.

7. This complaint arises out of the failure of DEFENDANT to make proper payments and/or the underpayment to Medical Provider by DEFENDANT and DOES 1 through 10, inclusive, of amounts due and owing now to HAMOC for use of facilities at which surgical care, treatment and procedures were provided to patients, who were insureds, members, policyholders, certificate-holders or were otherwise covered for health, hospitalization and major medical insurance through policies or certificates of insurance issued and underwritten by DEFENDANT and DOES 1 through 10, inclusive.

8. HAMOC is and was informed based on DEFENDANT's oral and other representations that the patients were insureds of DEFENDANT either as subscribers to coverage or dependents of subscribers to coverage under a policy or certificate of insurance issued and underwritten by DEFENDANT and DOES 1 through 10, inclusive, and each of them. HAMOC is and was informed that the Patient entered into a valid insurance agreement with DEFENDANT for the specific purpose of ensuring that the Patient would have access to medically necessary treatments, care, procedures and surgeries at medical facilities like Medical Provider and ensuring that DEFENDANT would pay for the health care expenses incurred by the patients.

9. HAMOC is and was informed that DEFENDANT and DOES 1 through 10, inclusive, and each of them, received and continue to receive, valuable premium payments from the patients and/or other consideration from the patients under the subject policies applicable to the patients.

- 3 -
Complaint

10. Medical Provider and the doctors who performed surgeries or procedures upon the patients were "out-of-network providers" or "non-participating providers" who had no preferred provider contracts or other such standing, written contracts with DEFENDANT setting their rates of pay for services rendered, prior to the date that the surgeries or procedures were performed upon the patients.

11. It is standard practice in the health care industry that when a medical provider enters into a written preferred provider contract with a health plan such as DEFENDANT, that a medical provider agrees to accept reimbursement that is discounted from the medical provider's total billed charges in exchange for the benefits of being a preferred or contracted provider.

12. Those benefits include an increased volume of business, because the health plan provides financial and other incentives to its members to receive their medical care and treatments from the contracted provider, such as advertising that the provider is "in network", and allowing the members to pay lower co-payments and deductibles to obtain care and treatment from a contracted provider.

13. Conversely, when a medical provider, such as Medical Provider, does not have a written contract or preferred provider agreement with a health plan, the medical provider receives no referrals from the health plan, but, rather, the health plan discourages its members and subscribers from obtaining their care from the non-contracted or non-participating providers.

14. The medical provider has no obligation to reduce its charges. Neither the health plan nor the patient is entitled to a discount from the medical provider's total bill charge for the services rendered, because it is not providing the medical provider with in network medical provider benefits, such as increased patient volume and direct payment obligations.

15. The reason why medical providers have chosen to forgo the benefits of a contract with a payor is that, in recent years, many insurers including DEFENDANT's contracted rates for in-network providers have been so meager, one-sided and onerous, that many providers like Medical Provider have determined that they cannot afford to enter into such contracts. As a result, a growing number of medical providers have become non-contracted or out of network providers.

16. Since, in general, no other relationship exists between out of network providers and payors/insurers, to properly determine whether or not to provide medical services to a patient, the common practice of out of network medical providers is to obtain a separate oral promise and assurance of payment from the payor or its administrator/agent. In the instance where the terms of payment are unsatisfactory a medical provider will make other arrangements with the patient or tell the patient if they cannot follow through on the other arrangements to seek services somewhere else.

17. Payors and insurers want their patients to be seen and so they commonly promise and agree to pay a percentage of the market rate for the procedure, also described as, an average payment for this procedure or use of facility performed or provided by similarly situated medical providers within similarly situated areas or places of practice. The payment amount is not given a specific numerical value because when a procedure takes place every issue that may occur during the procedure cannot be determined in advance. As a result, insurers make payment according to the market amount for the procedure that is actually provided. Unfortunately, rather than using the words market rate to simplify terms, payors have long used words or combinations of words such as usual, reasonable, customary and allowed, all to mean an average payment for this procedure or use of facility performed or provided by similarly situated medical providers within similarly situated areas or places of practice.

18. Facilities provided by Medical Provider to patients are not merely for the benefit of patients, but, rather, for DEFENDANT as well. DEFENDANT receives valuable premium payments from patients that would cease to be made were patients unable to receive services from providers of medicine like Medical Provider. Additionally, patients would seek out different insurers if they were unable to obtain the medical services that they desired because of those insurers unwillingness to pay for said medical services.

**SPECIFIC FACTS**

19. On November 17, 2015, Patient received a medical procedure at Medical Provider's facility.

20. On October 20, 2015, prior to providing facilities Medical Provider's representative, Kristi A., telephoned DEFENDANT and spoke with its representative, Heather, to obtain a specific request to perform the procedures, an agreement with DEFENDANT that they would pay for the facilities. All of the following information was documented in the ordinary course of Medical Provider's business.

21. Heather on behalf of DEFENDANT agreed to pay for the facilities and promised to pay 70% of the Customary and Reasonable ("CR") rate after Patient had met Patient's deductible up until Patient met his max out of pocket ("MOOP") at which point DEFENDANT would pay 100% of the CR rate.

22. Heather on behalf of DEFENDANT stated that Patient had met both Patient's deductible and Patient's MOOP.

23. Heather stated that the reference number for the call is and was 152930000782.

24. Therefore, on November 17, 2015, in sole reliance on their oral agreement and promises from the telephone call between DEFENDANT and Medical Provider, Medical Provider provided facilities for Patient.

25. Medical Provider timely submitted a bill for $188,161.00 to DEFENDANT's administrator Premera Blue Cross ("Premera").

26. DEFENDANT or Premera processed Medical Provider's bill no earlier than December 17, 2015 and paid $5,990.16, an amount far below what was promised.

27. Medical Provider attempted to resolve any issues that DEFENDANT may have had.

28. Medical Provider sent DEFENDANT letters indicating that the payment amount was in error and requesting an appropriate amount in accordance with the oral agreement. Premera and DEFENDANT refused to make the additional appropriate payment.

29. DEFENDANT continues to refuse to make proper payment and neither Medical Provider nor HAMOC have received any additional payment from DEFENDANT.

## FIRST CAUSE OF ACTION:

## FOR BREACH OF ORAL CONTRACT

30. HAMOC incorporates by reference all previous paragraphs alleged in this complaint as though fully set forth herein.

31. At all relevant times, an oral agreement and contract was in full force and effect between Medical Provider and DEFENDANT and DOES 1 through 10, inclusive, and each of them, whereby DEFENDANT and DOES 1 through 10, inclusive warranted, guaranteed, promised, pledged and agreed to pay, and indemnify Medical Provider, for all facilities provided to Patient at the CR rate. In reliance upon such agreement and contract, Medical Provider accepted Patient for treatment and provided facilities to initiate, administer and render surgeries and other medical services upon Patient, at great cost to itself.

32. Pursuant to the terms of the oral agreement, DEFENDANT and DOES 1 through 10, inclusive, and each of them, agreed to pay their portion of the full cost of the medical facilities at a CR rate.

33. Medical Provider has performed and satisfied all obligations and conditions precedent required on its part to be performed pursuant to the oral agreement. Specifically, Medical Provider contacted DEFENDANT and/or their agents, and each of them, in order to obtain certification and authorization, submitted claims, invoices for services and other documentation to allow the adjustment and payment of claims by DEFENDANT and each of them, and rendered care and treatment to Patient, pursuant to the terms of the subject oral agreement. DEFENDANT, and each of them, did certify, authorize and request the provision and rendition of medical services by Medical Provider to Patient and, by their representations, urged Medical Provider to proceed with and continue the care and treatment of Patient.

34. DEFENDANT has failed and refused to pay Medical Provider and now HAMOC for the agreed cost of the medical facilities which were provided to the Patient by Medical Provider. In denying payment for the charges incurred by the Patient, defendants, and each of them, have breached their obligations as set forth in the subject oral agreements.

35. As an actual, legal and proximate result of the aforementioned conduct of defendants, and each of them, HAMOC has suffered, and will continue to suffer in the future, damages under the oral agreement, plus interest, and other economic and consequential damages, for a total amount to be shown at the time of trial, but no less than $182,170.84.

## SECOND CAUSE OF ACTION
## FOR PROMISSORY ESTOPPEL

36. HAMOC incorporates by reference all previous paragraphs as though fully set forth herein.

37. DEFENDANT promised and asserted that the facilities to be provided and which were provided to Patient were covered, authorized, certified and would be paid for at the CR rate.

38. Medical Provider only decided to provide medical facilities because they were assured that payment would be made at the CR rate.

39. After assuring and promising Medical Provider that payment would be at the CR rate, DEFENDANT should have reasonably expected that Medical Provider would then go on to provide medical facilities expecting that payment would be made at that rate.

40. Medical Provider did rely on the statements, assertions and promises of DEFENDANT and provided the medical facilities to the Patient.

41. As a direct and proximate result of DEFENDANT's misrepresentations, Medical Provider has been damaged in an amount equal to the amount of money Medical Provider should have received had DEFENDANT paid the cost of the facilities at the CR rate.

42. The detriment suffered by Medical Provider is the amount required to make Medical Provider whole, for the time, cost and money expended in providing medical facilities to Patient. As a further direct, legal and proximate result of Medical Provider's detrimental reliance on the oral agreement and the misrepresentations of defendants, and each of them, Medical Provider has been damaged due to the loss of monies expended in providing said medical facilities for which it was significantly underpaid and has suffered damages in the loss of use of the proceeds and income to be derived from the medical services to which HAMOC is now entitled.

43. In light of the material representations and misrepresentations of DEFENDANT made to Medical Provider, and of Medical Provider's reliance on the oral agreement, and oral representations made by DEFENDANT and each of them, and based upon Medical Provider's detrimental reliance thereon, DEFENDANT, and each of them, are estopped from denying payment and indemnification for Patient's treatment CR rate and HAMOC is now entitled to the value enumerated by that calculation. An amount to be determined at the time of trial, but no less than $182,170.84.

### THIRD CAUSE OF ACTION:
### FOR QUANTUM MERUIT

44. HAMOC incorporates all allegations set forth in the above paragraphs as though fully set forth herein.

45. Medical Provider provided facilities for medical services, surgeries, procedures and other medical care and treatment to Patients, who are and were insured by DEFENDANT, at the request of DEFENDANT.

46. Prior to the date that services were rendered, DEFENDANT requested the use of Medical Provider's facility, offered prior authorization and pre-certification to Medical Provider and otherwise promised, consented, pledged, agreed and committed to pay Medical Provider at a the CR rate.

47. Patients are and were satisfied with the facilities that were used to provide medical services to the Patients. DEFENDANT requested and accepted the use of Medical Provider's facilities to be used to provide services to the Patients.

48. At the behest of DEFENDANT, Medical Provider provided facilities where surgeries, procedures, medical treatments and other medical services were provided to the Patients, thereby benefitting DEFENDANT and the Patients. DEFENDANT has failed and refused to pay Medical Provider the value for the facilities provided for Patients' use and for both DEFENDANT and Patients' benefit.

49. As an payor of insurance, DEFENDANT relies on medical providers such as Medical Provider to provide services to its policyholders, in this case the Patients.

50. Over the last seven years more and more medical providers are choosing to no longer accept insurance at all. DEFENDANT is benefitted by Medical Provider's willingness to accept DEFENDANT's insurance, which assures that DEFENDANT's policyholders will have a place to obtain healthcare.

51. DEFENDANT is further benefitted by the good care provided by Medical Provider to the Patients/policyholders, as that reflects back on DEFENDANT.

52. DEFENDANT also receives valuable premium payments from Patients and other policyholders with the understanding that DEFENDANT will be covering a reasonable portion of his/her care, should care be necessary.

53. The quantum meruit amount owed by DEFENDANT to HAMOC is determined according to the market rate of similarly situated medical providers.

54. Based upon DEFENDANT's request that Medical Provider provide a facility in which the Patients could receive treatment, surgeries, procedures and medical services, and the fact that DEFENDANT was benefitted by the provision of such services by Medical Provider, an obligation on the part of DEFENDANT to make restitution to Medical Provider arose.

55. DEFENDANT has refused to pay, and continues to refuse to pay Medical Provider for the whole of the sums originally owed to Medical Provider for the facility in which the Patients received treatment, surgeries, procedures and medical services. Accordingly, there is now due and owing, to HAMOC an unpaid sum to be determined at trial, but no less than $182,170.84.

///
///
///
///
///
///
///
///
///

## PRAYER FOR RELIEF

**WHEREFORE,** HEALTHCARE ALLY MANAGEMENT OF CALIFORNIA, LLC prays for judgment against defendants as follows:

1. For compensatory damages in an amount to be determined, but no less than $182,170.84, plus statutory interest;

2. For restitution in an amount to be determined, but no less than $182,170.84, plus statutory interest;

3. For a declaration that DEFENDANTS are obligated to pay plaintiff all monies owed for services rendered to the Patient; and

4. For such other relief as the Court deems just and appropriate

Dated: December 6, 2017	LAW OFFICES OF JONATHAN A. STIEGLITZ

By: _____
JONATHAN A. STIEGLITZ
Attorneys for Plaintiff, HEALTHCARE ALLY
MANAGEMENT OF CALIFORNIA, LLC

## DEMAND FOR JURY TRIAL

Plaintiff, HEALTHCARE ALLY MANAGEMENT OF CALIFORNIA, LLC hereby demands a jury trial as provided by law.

Dated: December 6, 2017	LAW OFFICES OF JONATHAN A. STIEGLITZ

By: _____
JONATHAN A. STIEGLITZ
Attorneys for Plaintiff, HEALTHCARE ALLY
MANAGEMENT OF CALIFORNIA, LLC



SHERRI R. CARTER
EXECUTIVE OFFICER / CLERK

SANTA MONICA COURTHOUSE
1725 MAIN STREET
SANTA MONICA, CA 90401

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

# Case Management Conference Date

Date:           Friday, April 06, 2018

Time:           8:30 am

Department:     K

Judge:          Gerald Rosenberg